# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.  2:09-cr-00212-RCJ-GWF |
| ) | |
| vs. ) | **FINDINGS &** |
| ) | **RECOMMENDATIONS** |
| ) | |
| MAURICO OLIVAS-GUICHO, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant Maurico Olivas-Guicho's Motion to Dismiss Based On A Prior Unlawful Deportation (#26), filed on March 12, 2010, and the Government's Response to Defendant's Motion to Dismiss Based On A Prior Unlawful Deportation (#27), filed on March 22, 2010.  The Court conducted a hearing in this matter on April 13, 2010.

The indictment in this case charges Defendant Maurico Olivas-Guicho with being a deported alien found unlawfully in the United States in violation of 8 U.S.C. §1326.  The indictment alleges that Defendant was found in the United States on May 7, 2009 after having been deported and removed from the United States on or about November 22, 1996.  *Indictment (#1)*.  Defendant argues that the deportation proceeding violated his Fifth Amendment right to due process of law because he was not informed by the immigration judge at the deportation hearing that he was eligible to apply for relief from deportation.  Accordingly, Defendant argues that the November 22, 1996 deportation order may not be used as a basis for the indictment.  The Government argues that Defendant was not eligible for relief from deportation based on his aggravated felony conviction.

**FACTUAL BACKGROUND**

Defendant Olivas-Guicho was admitted to the United States as a lawful permanent resident on May 29, 1985. Following a jury trial in the Superior Court of California, El Dorado County, Defendant was convicted on April 13, 1995 of possession for sale of a controlled substance, cocaine, in violation of California Health and Safety §11351. Defendant was sentenced to three years imprisonment on June 5, 1995. *Motion to Dismiss (#26), Exhibit "6", Abstract of Judgment.* On June 25, 1996, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing charging that Defendant was subject to deportation pursuant to Section 241(a)(2)(B)(i) based on his conviction for a crime involving controlled substances and pursuant to Section 241(a)(2)(A)(iii) based on his conviction for an aggravated felony. *Motion to Dismiss (#26), Exhibit "7", Order to Show Cause.* The Order to Show Cause was served on Defendant on November 7, 1996. Defendant appeared for a hearing before an immigration judge on November 22, 1996. A transcript or recording of the hearing has not been provided to the Court and is presumably unavailable. According to the "Record of Action," Defendant appeared at the hearing "pro se." *Motion to Dismiss (#26), Exhibit "8".* He was advised of his rights and waived his right to be represented by an attorney. *Id.* Defendant conceded the allegations against him and conceded deportability. He also waived his right to appeal. *Id.* The deportation order states that Defendant was deported to Mexico. The boxes on the order form regarding any applications for relief from deportation, including voluntary departure, were not checked. *Motion to Dismiss (#26), Exhibit "8".* As Defendant argues in his motion, there is no indication on the Record of Action or in the deportation order that Defendant was advised of the availability of any relief from deportation.

On June 5, 1997, Defendant attempted to re-enter the United States at the Los Angeles International Airport where he arrived on a flight from Mexico. Because his lawful permanent resident status had been revoked and he had previously been deported, Defendant was not admitted into the United States and was instead processed for expedited removal. *Motion to Dismiss (#26), Exhibits "11" and "12".* Defendant was subsequently found in Las Vegas, Nevada on May 5, 2009 when he went to the Las Vegas Metropolitan Police Department's

records desk to obtain an accident report.  A records check was conducted on Defendant which disclosed the existence of an immigration warrant.  Defendant was turned over to Immigration and Custom Enforcement ("ICE") and was thereafter indicted in this case.

## DISCUSSION

In a criminal prosecution under 8 U.S.C. §1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004), citing *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *cert. denied*, 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998).  A defendant charged with illegal reentry under 8 U.S.C. §1326 has a Fifth Amendment right to collaterally attack the removal order which serves as a predicate element of the charge.  *Id.,* citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).  To sustain a collateral attack under §1326(d), a defendant must demonstrate (1) that he exhausted all administrative remedies available to him to appeal the removal order, (2) that the underlying removal proceeding at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair.  *See* 8 U.S.C. §1326(d).  An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.  *Id.*, citing *Zarate-Martinez*, 133 F.3d at 1197.

An alien is barred from collaterally attacking his underlying removal order if he validly waived the right to appeal that order during the deportation proceeding.  *Ubaldo-Figueroa*, 364 F.3d at 1048, citing *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001), *cert. denied*, 534 U.S. 879, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001).  The exhaustion requirement of 8 U.S.C. §1326(d), however, does not bar collateral review of the deportation proceeding when the waiver of the right to appeal did not comport with due process.  A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent."  *Id. Ubaldo-Figueroa* held that the defendant was exempted from the exhaustion requirement in 8 U.S.C. §1326(d) because the immigration judge did not inform him that he was eligible for

discretionary relief from deportation. The court stated:

> We do not consider an alien's waiver of his right to appeal his deportation order to be "'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the Immigration Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'" *Muro-Inclan*, 249 F.3d at 1182 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)). The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is "mandatory," and "[f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding." *Id.* at 1183.

*Ubaldo-Figueroa*, 364 F.3d at 1049.

If the court determines that the defendant's due process rights were violated, then it must also determine whether he was prejudiced by the violation. To establish prejudice, the defendant does not have to show that he would actually have been granted relief, but only that he had a "plausible" ground for relief from deportation. *Ubaldo-Figueroa*, 364 F.3d at 1050. In *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003), the court stated that "[i]n order to demonstrate prejudice, [defendant] would also have to show that he is not barred from receiving relief. If he is barred from receiving relief, his claim is not plausible."

The issue in this case is whether Defendant's deportation proceeding was governed by the law as it existed prior to the 1996 amendments to the statutes governing deportation and removal. As the Supreme Court explained in *INS v. St. Cyr,* 533 U.S. 289, 292, 121 S.Ct. 2271, 2275 (2001), the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), enacted on April 24, 1996 and the Illegal Immigration Reform an Immigration Responsibility Act of 1996 (IIRIRA), enacted on September 30, 1996, contain comprehensive amendments to the Immigration and Nationality Act (INA). Prior to the enactment of these statues, Section 212(c) of the INA, codified at 8 U.S.C. §1182(c), stated:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .

*INS v. St. Cyr,* 533 U.S. at 295, 121 S.Ct. at 2276.

. . .

4

Although § 212(c) was literally applicable only to exclusion proceedings, it had been interpreted by the Board of Immigration Appeals to authorize permanent resident aliens to apply for a discretionary waiver of deportation. *Id.* As *St. Cyr* explained, beginning in 1990, statutes were enacted which reduced the size of the class of aliens eligible for discretionary relief under § 212(c):

> In 1990, Congress amended § 212(c) to preclude from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. § 511, 104 Stat. 5052 (amending 8 U.S.C. § 1182(c)). In 1996, in § 440(d) of AEDPA, Congress identified a broad set of offenses for which convictions would preclude such relief. See 110 Stat. 1277 (amending 8 U.S.C. § 1182(c)). And finally, that same year, Congress passed IIRIRA. That statute, *inter alia,* repealed § 212(c), see § 304(b), 110 Stat. 3009-597, and replaced it with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens, see *id.,* at 3009-594 (creating 8 U.S.C. § 1229b (1994 ed., Supp. V)). So narrowed, that class does not include anyone previously "convicted of any aggravated felony." § 1229b(a)(3) (1994 ed., Supp. V).

*INS v. St. Cyr,* 533 U.S. at 297, 121 S.Ct. at 2277.

The Supreme Court stated that long term permanent resident aliens who pled guilty to a crime before AEDPA and IIRIRA were enacted had a settled expectation that they would be eligible for discretionary relief from deportation and that such plea agreements were made in reliance the availability of such relief. The Court therefore held that § 212(c) relief remains available for aliens whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect. *INS v. St. Cyr,* 533 U.S. at 326, 121 S.Ct. at 2293.

In *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116 (9th Cir. 2002), the court distinguished *INS v. St. Cyr* in regard to an alien who was convicted of an aggravated felony following jury trial. In that case the respondent, Armendariz, was convicted in 1994 for possession of cocaine following a jury trial and was sentenced to a term in excess of five years. On April 5, 1996, the INS issued an order to show cause charging that Armendariz was deportable for having committed a qualifying controlled substance offense and an aggravated felony. The order to show cause was served on Armendariz on April 22, 1996. The INS did not file the order to show cause

with the immigration court, however, until December 19, 1996. An immigration judge conducted a deportation hearing in April 1997. Armendariz conceded deportability, but sought a discretionary waiver of deportation under § 212(c). The immigration judge determined that AEDPA §440(d) applied to Armendariz who was therefore ineligible for a § 212(c) waiver. The Board of Immigration Appeals upheld the immigration judge's decision. Armendariz petitioned to the district court, arguing that AEDPA §440(d) did not apply to his deportation proceeding which was commenced prior the the enactment of AEDPA on April 24, 1996. The district court agreed with Armendariz and the INS appealed to the Ninth Circuit.

   The Ninth Circuit stated that Section 440(d) of AEDPA categorically negates § 212(c) relief for those aliens deportable for having committed a qualifying controlled substance offense, or an aggravated felony. *Id.*, 291 F.3d at 1118. The court noted that IIRIRA repealed § 212(c) entirely, but that IIRIRA's transitional rules maintained the availability of § 212(c) relief, subject to AEDPA §440(d). *Id.*, n. 1. The court further stated that AEDPA's applicability depended on when Armendariz's deportation proceeding commenced. Under established law, a deportation proceeding commences when the the order to show cause is filed with the office of the immigration judge. *Id.*, at 1119-20. Although Armendariz was served with the order to show cause prior April 24, 1996 when AEDPA was enacted, the order was not filed with the immigration court until December 1996. The court therefore held that §440(d) was applicable to the deportation  proceeding. The court also held that application of §440(d) to bar respondent from discretionary relief under § 212(c) did not result in an impermissible retroactive effect. The court stated that "[u]nlike aliens who plead guilty, aliens who elected a jury trial cannot plausibly claim that they would have acted differently if they had known about §440(d)." *Id.*, at 1121.[1]

---

[1] In a recent unpublished decision, *Haque v. Holder*, 312 Fed.Appx. 946 (9th Cir. 2009), the court stated that §440(d) would not apply to an alien who was convicted following a jury trial, but who entered into a post-conviction plea agreement in which he gave up a potentially meritorious appeal in exchange for a reduced sentence. The court stated that "Haque has made a colorable argument that he would not have chosen to withdraw his appeal had he known that in doing so his eligibility for §212 relief would be eliminated and he would thereby lose any legal means to stave off deportation." *Id.*, at 947. The court stated, however, that it could not determine whether Haque agreed to withdraw his criminal appeal prior

In this case, Defendant Olivas-Guicho was convicted of possession of a controlled substance in 1995 following a jury trial. The deportation proceeding was clearly commenced after AEDPA's enactment on April 24, 1996. The order to show cause was not even issued until June 25, 1996 and was not served on Defendant and filed with the immigration court until November 1996. Accordingly, AEDPA §440(d) applied to the deportation proceeding and rendered Defendant ineligible for relief under former §212(c) of the Immigration and Naturalization Act.

## CONCLUSION

Based on the foregoing, Defendant Olivas-Guicho cannot show that his due process rights were violated or that he was prejudiced by the immigration judge's alleged failure to inform him of his eligibility to apply for relief from deportation. Defendant was ineligible for such relief at the time of the deportation hearing based on his prior aggravated felony conviction following jury trial. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant Maurico Olivas-Guicho's Motion to Dismiss Based On A Prior Unlawful Deportation (#26) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly

. . .

. . .

. . .

---

to April 24, 1996, AEDPA's effective date, and therefore remanded the case to Board of Immigration Appeals to make that determination.

address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 23rd day of April, 2010.

_____
**GEORGE FOLEY, JR.**
**United States Magistrate Judge**